[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These parties' marriage was dissolved on February 17, 1989. The judgment of dissolution of marriage incorporated, by reference, the terms of an agreement between the parties executed that date. The agreement, in salient part, provided, "The parties shall share equally educational expenses of high school and college for the children, provided, however, that neither shall be undertaken without the prior agreement of the parties, which agreement shall not be withheld unreasonably." The parties have four children, Samuel, Theresa, Joseph and Meghan. Samuel is now 20 and Theresa is 19 years old. Theresa is a freshman at University of Virginia and Samuel attends University of Connecticut, having transferred from Loyola.
The plaintiff filed Motion #120, Motion for Contempt in which she claims that the defendant had, "with knowledge of his responsibility" failed to comply with the provisions of the judgement regarding payment of college expenses for the children. In the motion, the defendant seeks a finding of contempt and reasonable attorney's fees and costs connected with the motion. An evidentiary hearing was held regarding the motion and briefs were filed.
In furtherance of a resolution of this motion the court makes the following findings of fact. Samuel started college at Loyola. His first choice was Boston College but did not attend there because they offered an insufficient amount of financial aid. In the Fall of 1993, the defendant offered to pay one-half of the CT Page 2961-Q cost of attending University of Connecticut for an in-state student. Samuel attended Loyola for one semester and then transferred to the University of Connecticut. He is presently in his junior year of college. The defendant has contributed $5,000 to the college educational expenses of Samuel. In August, 1994, the defendant told the plaintiff that he could no longer afford to contribute to the college expenses. Theresa attends University of Virginia. It was selected because she wanted to go there, it is a good school and after deducting the financial aid package offered costs approximately the same as University of Connecticut for an in-state student. The plaintiff has paid $8,757 for one year of educational expenses for the University of Virginia. She has unsuccessfully sought half, or, $4,378 of that from the defendant. She estimates that the full cost to her is $10,000 for the year, for expenses including tuition, room, board, trips, moving, travel, books, lab fees, and social expenses. No testimony was elicited as to the exact arrearage claimed in regard to this motion. However, the plaintiff did estimate that she was seeking "approximately $15,000 to date." She is paying 9% interest on a home equity loan she has taken to fund the college expenditures that she has paid.
While the defendant's financial affidavit does not disclose it, he has an additional asset that he acknowledged in testimony. Pursuant to the terms of the judgment, the plaintiff owes the defendant $65,000 by way of property settlement, due and payable on the earlier of "her death, remarriage or cohabitation (as defined in General Statute 46b-86 (b) for termination of alimony) or upon the sale of the property" or August 27, 1999. This obligation is secured by a note and a mortgage on her home. The defendant has subordinated the mortgage each time the plaintiff has refinanced.
The provision before the court is a post-majority support obligation created as a result of a written signed agreement of the parties. A provision for ". . . the care, education, maintenance or support . . ." of a child post-majority is enforceable as any other court order if it is in writing.Connecticut General Statutes Section 46b-66. "The trial court does not have jurisdiction to modify written agreements involving post-majority support without the further written agreement of both parties. Albrecht v. Albrecht, 19 Conn. App. 146, 154,562 A.2d 528 (1989). The question here, however, does not involve modification but involves a construction or interpretation of the original agreement. The power to enforce an agreement involving CT Page 2961-R post-majority child support may include the power to determine the amount each party is required to contribute under the terms of the agreement, if the parties' agreement contemplates such a determination by the court." Cattaneo v. Cattaneo, 19 Conn. App. 161,164 (1989).
The agreement which is a court order here states that ". . . each party shall share equally educational expenses of high school and college for the children, provided, however, that neither shall be undertaken without the prior agreement of the parties, which agreement shall not be withheld unreasonably."
The plaintiff claims that the defendant agreed to pay one-half of the children's college at the University of Connecticut rate, and, even if the court finds he did not, then that the defendant unreasonably withheld his agreement regarding the children's attendance at college and that he unreasonably refused to pay half of those college expenses. The defendant, in his, memorandum (Defendant's Objection To Plaintiff's Motion For Contempt Dated February 5, 1996) claims that their was no prior agreement of the parties as to the choice of college, and, that he could not agree because of his financial condition. The defendant acknowledged he wanted his children to attend college and that he was proud of his children's achievements in gaining admittance to the colleges they attended. He felt it inappropriate to involve himself further in the process inasmuch as he felt he lacked the resources to contribute financially to their education.
The issue, dispositive of this Motion for Contempt is whether or not the defendant unreasonably withheld his approval of college as a means to withhold his sharing equally in the children's college educational expenses. The withholding of his assent on college decision-making for both children was based on his own perceived inability to pay. As the agreement is written, the court must determine the reasonableness of that position. The facts of the situation determine whether or not his agreement was unreasonably withheld.
A review of the evidence, including the defendant's financial affidavit discloses the following facts. His net income is $801.49 per week; his court-ordered child support obligations (for this family and a subsequent one) are $329.00 per week. Thus before considering any other expenses, he has $472.79 net income per week not encumbered by other court ordered obligations. He CT Page 2961-S has; recurring shelter, transportation and modest food expenses which far exceed his $472.29 per week available to pay them. The defendant performs occasional part-time work as a limousine driver which is not shown on his financial affidavit. (He characterized that income as so sporadic it was not worthy of inclusion. No evidence was adduced as to the income derived from this work and therefore it cannot be considered in ruling on this motion.) The defendant owns real estate which does not appear to have sufficient equity to allow refinancing for borrowing, especially in light of a bleak debt picture of approximately $70,000 in consumer indebtedness.
Mr. McKnight has two main assets: the $65,000 note due from Ms. McKnight and his retirement which is valued at $44,736.86 with a $20,800 loan against it. This retirement account is very modest, with tax and potential penalties for the early withdrawal of the remaining balance. Mr. McKnight characterized the $65,000 note as an asset that he does not now have and he does not know if he will ever receive. It is an obligation due by court order.
Considering the totality of Mr. McKnight's financial position at this time, it was not unreasonable for him to fail to agree to college thereby undertaking the college expenditures of Samuel and Theresa, to date. The court finds that, notwithstanding Mr. McKnight's view to the contrary, the $65,000 note is an available asset, although not yet due and payable.
"The fact that the order had not been complied with fully, however, does not dictate that a finding of contempt must enter. It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the court's order." Marcil v. Marcil, 4 Conn. App. 403, 405
(1985).
No finding of contempt is made. Further, insufficient evidence was provided for the court to make a finding of an arrearage.
The court orders that Ms. McKnight shall have a right to set-off of one-half of the "college expenditures" of the parties' children to date against the note She shall account in writing to Mr. McKnight for the set-offs of claimed college expenditures within thirty days of this decision. She shall credit him the $5,000. already paid. Mr. McKnight has the right to contest the appropriateness, under the decree, of any amounts set-off. CT Page 2961-T
Lynda B. Munro, Judge